## DORRANCE v. DORRANCE et al. *

(Circuit Court of Appeals, Third Circuit.   December 14, 1916.   Rehearing Denied February 23, 1917.)

No. 2106.

1. WILLS ☞479—CONSTRUCTION—LONG-CONTINUED CONSTRUCTION.
 Where for more than 25 years a will has been accepted as creating a valid trust, the court, though such construction is not controlling, should be cautious in determining that no valid trust was created.
  [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1000–1003; Dec. Dig. ☞479.]

2. WILLS ☞456—CONSTRUCTION—TERMS.
 In construing a will, the ordinary meaning of language must prevail.
  [Ed. Note.—For other cases, see Wills, Cent. Dig. § 974; Dec. Dig. ☞456.]

3. WILLS ☞446—CONSTRUCTION—DOUBTFUL WORDS.
 Doubtful words in a will should be construed so that it may stand, rather than fall.
  [Ed. Note.—For other cases, see Wills, Cent. Dig. § 962; Dec. Dig. ☞446.]

4. WILLS ☞453—CONSTRUCTION—REASONABLE CONSTRUCTION.
 A will should be reasonably construed.
  [Ed. Note.—For other cases, see Wills, Cent. Dig. § 971; Dec. Dig. ☞453.]

5. PERPETUITIES ☞4(7)—VESTING REMAINDER—RULE AGAINST PERPETUITIES.
 A testator devised land in trust for the sole and separate use of his married daughter for life, and upon her death for the use of any child or children then living, and the issue of any deceased child or children, until the arrival at majority of the youngest of such children, and upon arrival then in trust to convey the same to such child or children, with directions, in event of the death of the daughter without leaving her surviving any child or issue of any deceased child, then in trust for the testator's other children upon the same trusts set forth as to their respective shares. Other portions of the will, dealing with gifts to other children, contained similar bequests and devises in trust to pay the income to such children for life, with remainders over to their children or issue, while the residuary clause to the children followed the provisions

of the devise to the married daughter, and declared that, in event of the death of the residuary devisees without issue surviving, the net rents, profits, and income should be paid to testator's children for and during their respective lives, and upon the death of any child his or her share should be paid to his or her children then living, the issue of any deceased child taking by representation, until the arrival at majority of such child, or, if more than one, of the youngest of such children, and upon arrival then in trust to convey the share of its or their parents to such child absolutely. *Held*, that none of the devises and bequests violated the rule against perpetuities, for, giving the words "child" and "children" the natural meaning, the estates would vest within a live or lives in being and 21 years thereafter.

[Ed. Note.—For other cases, see Perpetuities, Cent. Dig. § 12; Dec. Dig. ☞4(7).]

Appeal from the District Court of the United States for the Middle District of Pennsylvania; Chas. B. Witmer, Judge.

Suit by Estelle Dorrance against Benjamin F. Dorrance and others. From a decree for defendants (227 Fed. 679), complainant appeals. Affirmed.

Sigmund Zeisler, of Chicago, Ill., William Jay Turner, of Philadelphia, Pa., and Leonard B. Zeisler, of Chicago, Ill., for appellant.

John G. Johnson, of Philadelphia, Pa., for appellees.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. [1] In this action—which was begun in January, 1915, between citizens of different states—the plaintiff contends that the will of Charles Dorrance, Sr., violates the rule against perpetuities and is therefore void. If this be true, much and perhaps all of his property passed under the intestate laws, and the plaintiff (the childless widow of Charles, Jr., a son, who died intestate) has succeeded to an interest in her husband's share, and is entitled to relief. The will is an elaborate instrument, and shows the hand of a competent and careful lawyer. The controversy turns on the meaning of the trust provisions, and the fact that these have been accepted as valid for almost 25 years, while it is not controlling, calls upon us to be cautious in weighing the contention that a fatal mistake has been acted on for nearly a generation. Nothing is in dispute except the construction of the will; the District Court heard the case on bill and answer, and rejected the plaintiff's claim. 227 Fed. 679.

[2-4] Charles Dorrance, Sr., a resident of Luzerne county, Pa., died in January, 1892, leaving the following children and grandchildren: (1) Annie Reynolds, and her son, Dorrance; (2) Benjamin, and his daughters, Ann and Frances; (3) Ford, and his children, Susan, Sturges, and Charles; (4) Charles, Jr.; (5) John, and his daughter, Stella. It may perhaps be more satisfactory to examine the will by taking up its relevant paragraphs in succession, and while doing so we must, of course, bear in mind that we are striving to reach the meaning of this particular will, and that in such an effort we are to be guided by the well-known rules—as far as possible, the ordinary meaning of the words must prevail; and doubtful words must be so

construed that the will may stand, rather than fall. In a word, the will is to be reasonably construed; after its meaning has thus been ascertained, the question whether all or any of its provisions violate the rule against perpetuities will probably appear with sufficient plainness.

[5] We may say at once that an attentive study has satisfied us that the general scheme of the trust provisions is as follows: The testator was aware of the rule against perpetuities and tried to obey it. If he·has failed, the failure is due to inadvertence and *not to design;* but in our opinion he did not fail, but succeeded in carrying out his purpose. He intended the trusts he created to last as long as the rule would permit, and with that end in view he began by giving a life estate to each of his surviving children (and to one of his grandchildren). Then, as each child should die, he provided for the two possible contingencies that should then be presented: (1) The child might die without leaving children or remoter descendants; in that event, the share should pass to the testator's other children, or to their designated representatives, and should swell these other trust estates. (2) The child might die leaving children or remoter descendants; and, in that event, the trust should continue for the benefit of such children or remoter descendants. But, whichever contingency might happen, the respective trusts should last no longer than 21 years after the end of the lives in being at the time of the testator's own death. He could not know who would enjoy the benefits after his own children should die, and therefore, when he came to describe these possible beneficiaries, he used terms—"children" and "issue"—that would certainly be broad enough to include them all; but these terms were not intended to prolong the trust by indirection, and they did not prolong it beyond the limit he was careful to set in every instance. The terms referred to were mainly used to describe the persons that were to enjoy his bounty· during the interval between the death of his own children and the arrival of the date when the trust must end.

In the fifth paragraph a farm in Lehman township is devised in trust for the sole and separate use of the testator's married daughter Annie during her natural life, and upon her death—

"* * * in trust for the use of any child or children then living, and the issue of any deceased child or children (such issue taking always by representation) upon the same trusts, until the arrival at majority of the youngest of such children; and upon such arrival, then in trust to convey the same to such children, if there be more than one, as tenants in common, or to such child, if there be but one, as sole tenant.

"And in the event of the death of my said daughter without leaving her surviving any child or the issue of any deceased child, then in trust for my four other children hereinafter named, share and share alike and upon the same trusts as hereinafter set forth as to their respective shares."

We find nothing objectionable in this paragraph. The trust cannot continue longer than the life of Annie and 21 years thereafter. She died in 1905, leaving Dorrance as her sole heir, and as he was living in 1892 he must already have attained his majority. ·But, if Dorrance had died in his mother's lifetime leaving "issue" to represent him, the trust would determine when the youngest of such "chil-

dren" should arrive at majority, and (as all Dorrance's "children" or "issue" would have been living at Annie's death in 1905) the trust would cease within 21 years after that date. And this is true, whether we give a broad or a narrow meaning to the word "issue."

The seventh section has several paragraphs and disposes of the residuary estate. It deals first with the personalty (except a designated part), bequeathing it to a trustee, who is to pay over four-fifths of the net income in equal shares to Annie, Benjamin, Ford, and Charles, Jr., and is to divide the remaining fifth in certain proportions between John and his daughter, Stella. All these shares are to be paid during the natural lives of the six beneficiaries named, and upon the death of any one of the six his or her share of the income is to be paid—

"* * * to his or her child or children then living, and the issue of any deceased child then living (such issue taking by representation), until the arrival at majority of such child, or if there be more than one the youngest of such children, and upon such arrival then in trust to transfer such shares of such personal estate and investments and of said leases of coal to such children, if there be more than one, share and share alike and as tenants in common, or to such child if there be but one absolutely and as sole tenant.

"And in case of the death of any or either of my said children or of my said grand-daughter Stella Dorrance, without leaving him or her surviving any child or children or the issue of any deceased child, then in trust for my other children and my said grand-daughter Stella in the same proportions and shares on the same trusts as are herein expressed and declared as to their several shares" (adding a spendthrift clause).

Of the testator's children, Annie (as already stated) died in 1905, and Charles, Jr., and John died in 1914. All the grandchildren named are still living, and as far as appears no others have been born. Does the foregoing disposition of the personalty offend against the rule? In our opinion it does not. This trust also must determine within 21 years after the end of a life already in being at the time of the testator's death. To take one example: John is dead, leaving Stella as his only heir. If she had married, and had died before her father, leaving "children" or the "issue" of children, these "children" or "issue" would of course have been living when John died, and the trust would determine when the youngest of such "children" or "issue" should reach the age of 21 years—in other words, the trust would end within 21 years after John's death.

The residuary section then devises certain real estate in trust. There are four paragraphs, but as they are alike in meaning we shall consider one only—the devise for the benefit of Charles, Jr. He is to receive the net income of a farm in Kingston township during his natural life, and upon his death the trust is continued—

"* * * for any child or children and the issue of any deceased child living at his death (such issue taking always by representation), until the arrival at majority of such child, or if there be more than one the youngest of such children, and upon such arrival then in trust to convey said farm to such child if there be but one, or to such children if there be more than one as tenants in common.

"And in case of the death of my said son without leaving him surviving any child or children, or the issue of any deceased child or children, in trust for my other children share and share alike and the issue of any deceased

child (such issue taking always by representation). Said net rent, profits, and income to be paid to my said children for and during their respective natural lives, and upon the death of any such child his or her share of the same shall be paid to his or her child or children then living and the issue of any deceased child then living (such issue taking always by representation), until the arrival at majority of such child, or if more than one of the youngest of such children, and upon such arrival then in trust to convey the share of its or their parents to such child or children absolutely" (adding a spendthrift clause).

In our opinion these provisions also do not violate the rule. No "children" or other "issue" survived Charles, Jr.; but, even if he had left children or remoter descendants, the trust would nevertheless end when the youngest of these "children" or other "issue" should reach the age of 21 years—that is, at some date during a period measured by the life of Charles, Jr., and a maximum of 21 years thereafter.

It seems to us that the plaintiff may have been led to what we regard as a mistaken view of the will by laying too much emphasis on the language describing the persons that are to benefit after the estates for life. Perhaps some of this language might have been more definite; but, even if we concede so much, the plaintiff's position is not materially improved. We are not concerned at present with questions of distribution, either of income or of principal; and of course we cannot forecast the situation when the several trusts reach the limit fixed by the testator. When that time arrives, the proper tribunal will determine to whom the principal is to go, and will decide all questions of distribution that may then arise. At present, we think it comparatively unimportant to consider who may be entitled to receive the principal, or of what age, mature or immature, the ultimate beneficiaries may chance to be when full ownership is cast upon them; the only question for decision now is this—How long did the testator direct the trusts to last? If in every case he fixed the farthest limit (and we think he did) at the expiration of 21 years after a life in being at the time of his own death, the will is valid. When this particular limit shall be reached in a given case, the principal must then be distributed to the persons described by the testator, whoever these ultimate takers may be, and whether they be adults or very young children. And, if disputes arise meanwhile concerning the proper distribution of the income, these also can be settled by the proper tribunal. If the will is valid, the plaintiff has no interest in any of these matters.

We have not followed in detail the argument in the briefs of counsel and in the opinion below. These contain a much fuller discussion of the subject, but we have thought it sufficient to confine ourselves to a general statement of the conclusions reached.

For the reasons thus given the decree is affirmed.